# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1948
_____

Allstate Indemnity Company

*Plaintiff - Appellee*

v.

Joseph Dixon; Casey Dixon

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: April 17, 2019
Filed: August 1, 2019
_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

On February 14, 2014, Joseph and Casey Dixon purchased a former resort hotel in West Plains, Missouri, for $120,000 with the intention of turning it into a bed and breakfast (B&B) and marriage retreat. The property contained a 15-bedroom, 12-bathroom structure. The structure was insured for $479,857 actual cash value—an

amount far in excess of the $120,000 purchase price. On April 12, 2014, the property caught fire and burned to the ground in a little over an hour.

Allstate investigated the fire and concluded that it was set by or at the direction of Joseph Dixon. Allstate paid the mortagees $107,526.29 under the terms of the policy. It then commenced an action seeking a declaratory judgment that the Dixons had violated the intentional acts exclusion of the policy and that Allstate was entitled to recover its payment to the mortagees. The Dixons filed a counterclaim for breach of the insurance contract. The district court[1] denied the Dixons' motion for summary judgment. Allstate ultimately prevailed at trial. The Dixons appeal several evidentiary decisions and the denial of their motions for summary judgment, for judgment as a matter of law, and for a new trial. We affirm.

I.    **Background**

The Dixons purchased the subject property located at 791 State Hwy T, West Plains, Missouri, for $120,000. At the time of purchase, they owned an uninsured property in Willow Springs, Missouri, that they ran as a location for marriage retreats. The Dixons' stated purpose for purchasing the West Plains property was to run a B&B and to also use it as another location for wedding retreats. Between the time of purchase and the blaze, no material steps were taken to convert the property into its intended use as a B&B or a wedding retreat location, and the structure sat mostly dormant.

When the Dixons were looking to purchase insurance for the property, they rejected two proposals to insure the property for $120,000 and $300,000 before accepting a proposal to insure the property for $479,857 actual cash value and

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

$60,000 for personal property. The property was insured for nearly four times the $120,000 purchase price. One month after the insurance policy went into effect, the building burned to the ground. The Dixons filed a sworn statement in proof of loss. Shortly thereafter, Allstate began investigating the claim.

At the beginning of the investigation, Allstate retained Terry Decker, a certified fire investigator, to collect data about the incident and the fire scene. Decker was certified as a fire and explosion investigator by the National Association of Fire Investigators in 1997 and as a fire investigator by the International Association of Arson Investigators in 2001. He also was a certified fire investigator through the Missouri Department of Public Safety. As part of maintaining his certifications, Decker was required to engage in ongoing education and training.

Decker investigated and photographed the scene, and reviewed photographs of the house prior to the fire. He interviewed the Dixons, their neighbors, and public fire officials, and also reviewed the local fire department report, 911 logs, and weather history data. Based on that information, Decker created a timeline of events. Joseph Dixon indicated he left the property with a man named Donald Hitch sometime between 7:30 p.m. and 8:00 p.m. Dixon described the sky as getting dark when he left. When the fire was discovered at 9:11 p.m., it was "totally involved" and caused the complete destruction of the building. Decker came up with a number of hypotheses to explain the blaze, including the possibility of accidental, undetected fires burning prior to when Dixon left and the possibility that the fire was burning at or shortly after Dixon left the property. After weighing those hypotheses against the collected evidence, Decker concluded that the fire must have been burning when or shortly after Dixon left the property. As part of his determination, Decker considered weather data that showed that twilight set at 8:06 p.m. on the night in question. Given Dixon's statement that it was getting dark when he left, Decker concluded that Dixon left the property at or slightly after 8:00 p.m. The destruction of the building meant that Decker was unable to come to a conclusive opinion as to the cause or

origin of the fire, but that he could not rule out that it was an intentionally-set fire. Decker opined that the fire developed rapidly and progressed at an abnormal rate.

Allstate retained a second certified fire investigator, Robert Wysong, to review the fire given the tight timeline that Decker identified. Wysong was the owner and president of ACS Investigative Services, a fire investigation company in operation since 1991. Wysong was certified as a fire and explosion investigator by the National Association of Fire Investigators. Wysong reviewed Decker's report as well as the sworn statements of the Dixons and Donald Hitch and photographs of the property. Wysong considered a number of hypotheses regarding the blaze, including the possibility of a fire caused by lightning, a fire caused by candle, a fire set in more than one location, and a fire that had been burning more than an hour. Wysong ultimately concluded that the fire must have been burning for more than an hour before discovery or that the area of origin was not a single location.

Allstate's interviews with the Dixons and Donald Hitch did not suggest any alternative issues with electrical appliances that might have led to the blaze. During Casey Dixon's examination under oath, she testified that she thought somebody started the fire. Allstate, relying on the fire expert reports and the Dixons' sizable financial motive to commit arson, determined that the loss was not covered because the fire was intentionally set by or at the direction of Mr. Dixon. Pursuant to the policy, Allstate issued a payment to the mortgagees in the amount of $107,526.29.

Allstate filed a complaint for declaratory judgment on November 20, 2014. On February 26, 2015, Allstate amended its complaint and sought a judgment that the intentional acts exclusion barred coverage for the loss and that Allstate was entitled to recover its payment to the mortgagees of $107,526.29. The Dixons filed a counterclaim alleging that Allstate breached the insurance contract. The district court denied the Dixons' motion for summary judgment on both the complaint and the counterclaim.

Before and during trial, the Dixons objected to the admission of testimony from Allstate's fire experts. Their objections were based in part on whether the fire experts had followed NFPA 921, an authoritative guideline in the field of fire investigation. Neither expert purported to have exhaustively applied NFPA 921. Instead, each suggested that they had used the scientific method and deductive reasoning, as explicitly referenced by NFPA 921. The Dixons argued that NFPA 921 required physical testing that neither fire expert had conducted and that therefore neither expert had used a reliable method. The district court overruled the objections and allowed the experts to testify. In addition to testifying to their certifications and training experience, Decker testified that he had conducted over 2,000 fire investigations, and Wysong testified that he had conducted over 3,000 fire investigations. Each also testified to previous cases in which he had served as an expert fire witness.

The Dixons offered testimony from their own fire expert, Phillip Noah. Noah criticized the opinions offered by Decker and Wysong after conducting a "desktop review" of their work. Noah did not conduct physical testing or visit the scene of the fire itself.

The Dixons filed motions for judgment as a matter of law at the close of Allstate's evidence and at the close of all evidence. Each motion was denied. The jury returned a general verdict in favor of Allstate. In response, the Dixons filed a renewed motion for judgment as a matter of law and for a new trial, each of which was denied. Allstate filed a post-trial motion to recover the $107,526.29 payment to the mortgagees. The district court entered an order granting the motion and entered a judgment against the Dixons for $107,526.29. The Dixons now appeal.

## II.    Discussion

### A.    Expert Testimony Regarding the Cause of the Fire

We review the district court's decision to admit expert testimony for abuse of discretion.  Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (8th Cir. 1996) (citing Westcott v. Crinklaw, 68 F.3d 1073, 1075 (8th Cir. 1995)).  In order for a court's decision to admit evidence to amount to an abuse of discretion, any error must be "clear and prejudicial to the outcome of the proceeding."  Torbit v. Ryder Sys., Inc., 416 F.3d 898, 903 (8th Cir. 2005) (citation omitted).

The admission of expert testimony is governed by Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).  "The inquiry envisioned by Rule 702 is . . . a flexible one."  Daubert, 509 U.S. at 594.  "Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission."  Id.  To properly admit evidence under the rule, district courts must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  Id. at 592.

The Dixons challenge the admission of Allstate's fire experts' testimony because the experts did not precisely follow the industry guide NFPA 921, in particular due to a lack of a physical testing. The Dixons' claims related to testing conflate the testing of various hypotheses using the scientific method with physical tests.  Where physical testing is not feasible, "observations coupled with expertise generally may form the basis of an admissible expert opinion."  Shuck v. CNH Am., LLC, 498 F.3d 868, 875 (8th Cir. 2007).  A hypothesis is appropriately tested under the scientific method by comparing all known facts, acquired data (of which physical test results is but a part), and the developed body of scientific knowledge to the hypothesis.  Allstate's well-qualified fire experts thoroughly explained their

-6-

methodologies to the district court and explained why their methods had scientific reliability, even absent physical testing.

The "flexible inquiry" that district courts must conduct under Rule 702 and the different explanations that fire experts might give for their choice of methodologies may lead to differing decisions as to whether to admit different experts' testimonies. For example, in Hickerson v. Pride Mobility Prod. Corp., 470 F.3d 1252, 1257 (8th Cir. 2006), we upheld a district court's decision to admit an expert's testimony where the expert:

> examined burn patterns, examined heat, fire, and smoke damage, considered this evidence in light of testimony regarding the fire, and identified a point of origin . . . considered as possible causes of the fire those devices that contained or were connected to a power source and that were located at the identified point of origin . . . [and] eliminated as possible sources those devices that were not in the area of origin or that were not connected to a power source and contained no internal power source.

In a case involving similar scientific theories, Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1058–60 (8th Cir. 2005), we affirmed a district court's decision to exclude fire expert testimony where the experts could not show they reliably applied the methodology they articulated and where their interpretations of the meaning of burn pattern evidence dramatically changed between initial report and rebuttal report.

In this case, Allstates' experts "observed the relevant evidence, applied their specialized knowledge, and systematically included and excluded possible theories of causation." See Shuck, 498 F.3d at 875 (allowing opinion of experts who used that approach). Accordingly, the district court did not make a "clear and prejudicial" error affecting the outcome of the proceeding by admitting the opinions.

B.     Denial of Motion for Judgment as a Matter of Law

We review the district court's denial of a motion for judgment as a matter of law *de novo*. McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir. 1994) (citation omitted).  We apply the same standards as the district court and ask "whether there is sufficient evidence to support a jury verdict."  Id. (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)).  "Judgment as a matter of law is appropriate only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'"  Id. (quoting White, 961 F.2d at 779).

Under Missouri law, "[s]o long as the evidence and the reasonable inferences to be drawn therefrom tend more toward the probability that the fire was brought about by the procurement" of the Dixons, Allstate's "burden of submissibility has been sustained."  Farm Bureau Town & Country Ins. Co. of Missouri v. Shipman, 436 S.W.3d 683, 685 (Mo. Ct. App. 2014) (quoting Bateman v. State Farm Fire & Cas. Co., 814 S.W.2d 684, 685 (Mo. Ct. App. 1991)).  The combination of Allstates' expert testimony regarding the possible causes of the fire, the rapid nature of the blaze, evidence of the Dixons' financial incentives, and potential negative credibility determinations by the jury against the Dixons suffices to meet that burden of submissibility.  The district court did not err in denying the Dixons' motion for judgment as a matter of law.[2]

---

[2]The Dixons also seek to appeal the district court's denial of summary judgment pre-trial.  However, the vehicle for examining whether or not the evidence supports the verdict post-trial is a motion for judgment as a matter of law under Rule 50(b), not an appeal of the initial denial of summary judgment.  See Ortiz v. Jordan, 562 U.S. 180, 184 (2011) (explaining that a party may not "appeal an order denying summary judgment after a full trial on the merits").

C.	Denial of Motion for a New Trial

We will not reverse a district court's denial of a motion for a new trial under Federal Rule of Civil Procedure 59(a) absent an abuse of discretion amounting to a miscarriage of justice.  See PFS Distribution Co. v. Raduechel, 574 F.3d 580, 589 (8th Cir. 2009) (citations omitted).  The jury was presented with substantial circumstantial evidence concerning the Dixons' financial incentives and the nature of the blaze.  The district court's denial of the Dixons' motion for a new trial was not a miscarriage of justice in light of that evidence.

D.	Entry of Judgment Against the Dixons for $107,526.29

The district court ordered the Dixons to repay Allstate the $107,526.29 it advanced to the mortgagees following the fire, holding that Missouri law would allow for recoupment of that amount by Allstate.  See Allstate Ins. Co. v. Estes, 118 F. Supp. 2d 968, 974 (E.D. Mo. 2000), aff'd, 16 F. App'x 534 (8th Cir. 2001) (per curiam) ("[U]nder Missouri law, when an insurer pays a mortgagee for loss from an insured's arson, the property insurer is entitled to recoupment and restitution of that amount from the insured.").  But see Schroeder v. Prince Charles, Inc., 427 S.W.2d 414, 419 (Mo. 1968) ("[R]ecoupment is a purely defensive matter . . . and is available only to reduce or satisfy a plaintiff's claim.").  We may affirm the district court's ruling as a valid exercise of its authority to fashion a "remedy under § 2202 of the Declaratory Judgment Act."  See Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover, 563 F.3d 329, 356 (8th Cir. 2009) (noting the discrepancy between state and federal cases on Missouri recoupment law and upholding a district court's imposition of a damages award in a declaratory judgment action).  "District courts have broad power under 28 U.S.C. § 2202 to craft damages awards in declaratory judgment actions to effectuate their judgment."  BancInsure, Inc. v. BNC Nat. Bank, N.A., 263 F.3d 766, 772 (8th Cir. 2001).  Allstate was entitled to the payment it made to the mortgagees once it validly denied coverage under the policy

to the mortgagor. On this verdict, in favor of Allstate and against the Dixons, the district court was entitled to order restitution of the amount paid the mortgagees as a means of effectuating the verdict in favor of Allstate in a declaratory judgment action.

      E.    Judgment Against Casey Dixon

Joseph and Casey Dixon were issued a joint insurance policy on which they were both listed as named insureds. The policy notes that "the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon every other person defined as an insured person." "[A]n innocent co-insured is barred by a co-insured's violation of a provision of the policy if the policy so provides." Employers Mut. Cas. Co. v. Tavernaro, 4 F. Supp. 2d 868, 870 (E.D. Mo. 1998) (discussing Amick v. State Farm Fire and Cas. Co., 862 F.2d 704 (8th Cir. 1988), and Haynes v. Hanover Ins. Companies, 783 F.2d 136 (8th Cir. 1986)). Judgment was therefore properly entered against Casey Dixon as a co-insured, even where the verdict director focused on Joseph Dixon.

## III.   Conclusion

We affirm.

_____