# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1814
_____

Tonia Ackerman; Dennis Ackerman

*Plaintiffs - Appellants*

v.

U-Park, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 13, 2019
Filed: March 3, 2020
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Tonia Ackerman ("Ackerman") alleged that she suffered permanent injuries from a fall caused by the negligent removal of ice and maintenance of an asphalt parking lot operated by U-Park in Omaha, Nebraska. Her husband sought damages

for loss of consortium. The district court[1] granted U-Park's motion *in limine* to exclude expert Philip Wayne's opinions on causation and granted U-Park's motion for summary judgment. The Ackermans appeal both decisions. We affirm.

## I.    Background

U-Park operates several parking lots in Omaha, Nebraska, including an asphalt lot located at 555 N. 13 Street ("Lot 13"). On February 13, 2016, Ackerman paid the $5.00 fee to park her car in Lot 13 so she could attend her daughter's volleyball tournament being held at the adjacent CenturyLink Center. After parking, Ackerman alleged that she "walked approximately one car length when she slipped and fell on a patch of black ice that she was unable to see because it blended into the blacktop." Compl. ¶ 9. Black ice is "thin hard ice which is transparent and often difficult to see, esp. as deposited on a road in cold weather." Oxford English Dictionary Online, https://www.oed.com/view/Entry/19670?redirectedFrom=black+ice#eid19401002 (last visited January 29, 2020).

Joseph Schmitt, a part-owner of U-Park, was collecting parking fees at the time of Ackerman's fall. Schmitt testified that he was unaware of the presence of ice in the parking lot. Approximately 30 minutes after Ackerman fell, Schmitt took photographs of the area and spread ice melt. In the photographs, the viewer can see asphalt, the rear of a car, a yellow line marking the left side of the parking space, three large yellow numbers identifying the stall number, and an irregular circular shape that is plainly darker than the rest of the surrounding asphalt. No precipitation occurred in Omaha in the six days before Ackerman fell. The approximate temperature when Ackerman fell was 17 degrees. Since no one knew how or when the ice originated, each side retained an expert to assist with answering those questions.

---

[1]The Honorable Robert F. Rossiter, District Judge for the District of Nebraska.

The Ackermans retained Philip B. Wayne as their expert. Wayne has a bachelor's degree in business administration with a concentration in economics. He has managed numerous properties for 50 years. In the report he prepared for this case, Wayne opined that Ackerman slipped and fell on black ice that had formed in a "birdbath." Although neither Ackerman nor Schmitt noted the existence of a "birdbath" at the time of accident, Wayne reached his conclusion that a "birdbath" existed because, in his opinion, there had been "virtually a complete lack of maintenance to the parking lot surface" and that the "condition has been in process for many years, and any effort to make repairs for the most part are non-existent." He further concluded that "[f]rom the deplorable condition of the lot's surface, it is no stretch that other areas of maintenance functions were left undone that includes effective ice control."

Wayne based his opinions on three visits to the parking lot. The first took place on March 8, 2018, over two years after Ackerman fell. On this visit, Wayne rolled a volleyball across the lot to track the direction water flowed. He also looked for staining on the asphalt where water had previously been. He observed several indentations in the asphalt where water could pool in "birdbaths" near where Ackerman fell. Wayne took three videos during his visit to the parking lot, but only one showed a green ball rolling and the other two were obscured by Wayne's hand. Shortly after this visit, Wayne returned to the lot after a rainstorm and drove through to see where the water was flowing and where the asphalt was wetter. He did not take any photographs or videos on this visit. On the last visit on May 17, 2018, Wayne took 15–17 photographs of the parking lot. Other than providing a general overview of the condition of the parking lot at that time and area near where Ackerman fell, none of the photographs focus on the actual location where Ackerman fell.

The Ackermans brought claims for negligence and loss of consortium. U-Park moved to exclude Wayne's expert opinions on asphalt deterioration/causation and

moved for summary judgment. The district court granted both motions. The Ackermans appeal both issues.

## II.     Discussion

We review the exclusion of expert opinions for an abuse of discretion. Lawrey v. Good Samaritan Hosp., 751 F.3d 947, 951 (8th Cir. 2014). Because we review *de novo* the evidence and testimony presented during summary judgment proceedings in the light most favorable to the non-moving party, we cast the facts and reasonable inferences of this case in the light most favorable to the plaintiffs. Hickerson v. Pride Mobility Products Corp., 470 F.3d 1252, 1256 (8th Cir. 2006)).

### A.     *Exclusion of Wayne's Expert Opinion*

Under Federal Rule of Evidence 702, an expert opinion is admissible if (1) "the testimony is based upon sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case." When determining the reliability of an expert's opinion, a court examines the following four non-exclusive factors: (1) whether the expert's theory or technique "can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" and (4) "general acceptance." Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579, 593–94 (1993). These factors are not exclusive or exhaustive and the court may tailor its inquiry to fit the particular facts of a case. Presley v. Lakewood Eng'g & Mfg. Co., 553 F.3d 638, 643 (8th Cir. 2009) (citations omitted). As the gatekeeper, the district court's role is to discern "expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." Glastetter v. Novartis Pharm. Corp., 252 F.3d 986, 989 (8th Cir. 2001).

The district court excluded Wayne's expert opinion that Ackerman's fall was caused by black ice that would not have existed but for the birdbath in the asphalt. The court found that Wayne's opinion would not assist the trier of fact for the following reasons: (1) Wayne was not qualified to offer an opinion on asphalt deterioration or birdbath creation; (2) Wayne's "testing" (observing asphalt stains; rolling a volleyball; and driving through the lot after a rain shower) was not reliable and his methodology failed to meet Daubert standards; and (3) Wayne's theory that he can tell how long a birdbath existed "by reading the stains of asphalt like the rings of a tree" was unsupported.

Wayne's expert opinion regarding the existence of a birdbath that caused black ice to form fails to comply with Daubert standards. It is indisputable that Wayne lacks academic qualifications so his ability to offer an expert opinion turns on his experience as a property manager as well as the bases for his opinion. While Wayne has broad experience in managing commercial property, his opinion is based on vague theorizing and amorphous general principles. Wayne's first visit to the property occurred over two years after Ackerman fell. Despite his ultimate conclusion that Ackerman's fall was caused by the presence of black ice forming in a birdbath, Wayne failed to take any photographs on that visit or any subsequent visit that would corroborate this theory. The photographs taken by Schmitt approximately 30 minutes after the accident do not show the presence of a birdbath-type depression in the asphalt. Neither Schmitt nor Ackerman noted any kind of depression, indentation, or defect in the asphalt. Lacking any evidence that a birdbath existed either at the time of the fall or when he visited the property over two years after the accident, Wayne asked the court to accept his *ipse dixit* that a birdbath existed at the time of Ackerman's fall. In the absence of any record evidence that Wayne used reliable principles and methods or applied them reasonably to the facts of this case to form his opinion that Ackerman's fall was caused by black ice forming in a birdbath, his opinion does not satisfy the Rule 702 standards for admissibility. The district court

did not abuse its considerable discretion in excluding Wayne's expert opinion on causation.

### B.     *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We may affirm a grant of summary judgment on any basis supported by the record. Beckley v. St. Luke's Episcopal-Presbyterian Hosps., 923 F.3d 1157, 1160 (8th Cir. 2019). Because this is a diversity action, we apply the substantive law of the forum state, here Nebraska.

With regard to the standard of care owed to business invitees under Nebraska law, owners or occupiers of land are not insurers of their premises. Aguallo v. City of Scottsbluff, 678 N.W.2d 82, 89 (Neb. 2004) (quoting Heins v. Webster County, 552 N.W.2d 51, 57 (Neb. 1996)). Decades ago the Nebraska Supreme Court held that a business owner has no legal responsibility "to protect a customer against hazards which are known to the customer and are so apparent that he may reasonably be expected to discover them and be able to protect himself." Crawford v. Soennichsen, 120 N.W.2d 578, 581 (Neb. 1963). For example, a store owner may not be held liable for a customer's injuries resulting from a natural accumulation of snow and ice because the condition was as well known to the invitee as to the premises owner. Id. Most recently, the Nebraska Supreme Court has articulated the elements for premises liability as follows: an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the visitor proves the following:

> (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3)

that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.

Edwards v. Hy–Vee, Inc., 883 N.W.2d 40, 43 (Neb. 2016) (citation omitted).

This case is complicated by the allegations in the pleadings that contradict photographic evidence and the parties' testimony. Ackerman's allegation that her fall was caused by "black ice" is belied by the photographs in the record taken shortly after her fall that show the ice was visible, i.e. open and obvious, and the testimony of both Ackerman and Schmitt that they both immediately recognized the cause of Ackerman's fall to be ice. Under either scenario, whether Ackerman slipped on "black ice" or the ice was visible and apparent, U-Park is entitled to summary judgment.

"Negligence is not presumed and must be proved by evidence, direct or circumstantial." Pantano v. Am. Blue Ribbon Holdings, LLC, 927 N.W.2d 357, 365 (Neb. 2019). Ackerman has the burden of providing sufficient evidence to create a material question of fact regarding whether U-Park had either actual or constructive notice of the condition that caused her to fall. Cloonan v. Food-4-Less of 30th & Weber, Inc., 529 N.W.2d 759, 763 (Neb. 1995). Ackerman testified that she did not see the isolated spot of "black ice" that existed on the otherwise bare asphalt before falling, and, as noted by the dissent, U-Park argued that the ice was not "visible and apparent." Schmitt testified that he was unaware of the icy patch before Ackerman fell.

After Ackerman fell, Schmitt photographed what appears to be ice. A reasonable inference that can be drawn from the evidence is that ice was present at the location of Ackerman's fall. But, under Nebraska law, "[i]n order for a defendant to

have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it." Cloonan, 529 N.W.2d at 763. If the ice was not visible and apparent, as alleged by Ackerman, U-Park is entitled to summary judgment because, as noted by the district court and the dissent, U-Park is not required to see what cannot be seen. Id.

If, on the other hand, the ice was visible and apparent as it appears in the photographs and reported by Ackerman and Schmitt after the accident, the evidence in the record fails to create a reasonable inference that the isolated patch of ice upon which Ackerman slipped was present for an appreciable period of time such that a reasonable business owner was on notice or should have been "on notice of the possibility of the existence of such a condition so as to reasonably require inspection of the premises." Kozloski v. Modern Litho, Inc., 154 N.W.2d 460, 463 (Neb. 1967) (reversing jury verdict and dismissing plaintiff's negligence case because business owner had no duty to inspect premises and discover a thin layer of ice for which there was no knowledge by the defendant or explanation for the appearance of ice); see Crawford, 120 N.W.2d at 581 (a business owner does not have a legal responsibility to protect against hazards which are known and so apparent that an invitee may reasonably be expected to discover them and protect herself unless perhaps the injury occurs at nighttime or as a result of an unlighted condition, or under circumstances where the injured person was "reasonably unaware of the dangerous condition," or under circumstances constituting a trap).

Here, there had been no precipitation for six days. Ackerman fell during the daytime, shortly after 2:15 p.m. Only varying speculative explanations, without any time frame, exist in the record for the cause of the isolated icy patch. The record lacks evidence from which a reasonable inference can be drawn that U-Park should have had notice of the dangerous condition. And, perhaps most importantly, there is no evidence to suggest that U-Park should have anticipated that Ackerman would not see

visible ice, realize the danger of the ice, or fail to protect herself against the danger. Williamson v. Bellevue Med. Ctr., LLC, 934 N.W.2d 186, 193 (Neb. 2019) (one of the elements for a premises liability claims is evidence from which a reasonable juror could find that an invitee either would not discover or realize the danger, or would fail to protect himself or herself against the danger).

Demonstrating that an accident occurred does not prove negligence. Under Nebraska premises liability law, there is no issue of negligence to submit to a jury when there is a lack of evidence establishing the defendant's knowledge of the dangerous condition or of a failure to exercise reasonable care to discover it, or if there is a lack of evidence establishing the defendant should have expected the plaintiff would not discover, realize the danger, or fail to protect herself against it. Syas v. Nebraska Methodist Hosp. Found., 307 N.W.2d 112, 115 (Neb. 1981). Without Wayne's testimony, the Ackermans are unable to create a material fact dispute regarding U-Park's alleged failure to exercise reasonable care to discover and remedy the ice. There is no evidence in the record from which we can draw a reasonable inference that if the ice was visible and apparent that Ackerman would not discover or realize the danger of the ice or fail to protect herself against it.

## III.  Conclusion

For the foregoing reasons, we find that the district court did not abuse its discretion in excluding Wayne's causation opinions. The Ackermans have failed to present sufficient evidence creating a fact question under Nebraska law that would permit the Ackermans to hold U-Park liable for the isolated, icy patch in its parking lot on February 13, 2016. Accordingly, we affirm the grant of summary judgment.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I agree that it was within the district court's discretion to exclude Wayne's expert opinion that there was a "birdbath" where Ackerman slipped and fell in 2016. But I do not agree that, without that opinion, U-Park was entitled to summary judgment. The court affirms the grant of summary judgment under two alternative scenarios. Because there are genuine disputes of material fact under both scenarios, I respectfully dissent.

The first scenario stems from Ackerman's allegation that she "slipped and fell on a patch of black ice that she was unable to see because it blended into the blacktop." U-Park seized on this description and argued that it could not be liable because the ice was not "visible and apparent" and U-Park was "not required to see what cannot be seen by other human beings." See Cloonan, 529 N.W.2d at 763. The district court agreed and granted summary judgment on this basis. However, there is evidence in the record indicating that the ice *could* be seen by other human beings. Schmitt was able to locate the ice, photograph it, and remove it with ice melt. And, as the court recognizes, "the photographs in the record taken shortly after [Ackerman's] fall . . . show the ice was visible." Ante at 7. In my view, this presents a triable issue as to whether the ice was "visible and apparent."

U-Park contends that, even if the district court was wrong to grant summary judgment on this basis, we may still affirm because Ackerman cannot show that the ice was present for a "sufficient length of time" for U-Park to discover and remedy the condition before Ackerman fell. I think this is a close question. But Nebraska courts have recognized that, unlike other conditions, ice "cannot form in an instant." Starks v. Wal-Mart Stores, Inc., No. A-17-801, 2018 WL 3456008, at *6 (Neb. Ct. App. July 17, 2018). There had been no precipitation for six days and the temperature had been below freezing for three days before Ackerman's fall. Schmitt further testified that, although his usual practice was to drive through the lot when he arrived in the

-10-

morning to "make sure everything [wa]s okay" and to walk through the lot during the day to "check the surroundings," he was not sure whether he did so on the day of Ackerman's fall. At this stage of the litigation, we are required to construe the evidence in the light most favorable to Ackerman and to draw all reasonable inferences in her favor. Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.3d 799, 802 (8th Cir. 2019). Viewing the evidence in this light, I believe there is a triable issue as to whether U-Park failed to inspect the parking lot on the day of Ackerman's fall and would have discovered the ice in the exercise of reasonable care.

That exhausts the arguments that have been raised by the parties and briefed on appeal. But the court also offers an additional rationale for affirming the district court. It reasons that, if the icy condition was visible and apparent, then it must have been known and apparent to Ackerman. And it concludes that, in that scenario, U-Park cannot be liable because "a business owner does not have a legal responsibility to protect against hazards which are known and so apparent that an invitee may reasonably be expected to discover them and protect herself." Ante at 8 (citing Crawford, 120 N.W.2d at 581).

But there is no hard-and-fast rule in Nebraska that a land possessor cannot be liable for known and apparent conditions. Over three decades ago, the Nebraska Supreme Court modified the rule in Crawford and "expanded the potential for finding a duty owed by possessors to invitees in the area of known or obvious dangers." Carnes v. Weesner, 428 N.W.2d 493, 498 (Neb. 1988). The Nebraska Supreme Court now embraces the "modern view" that land possessors may be liable for known and obvious conditions in certain circumstances. Corbin v. Mann's Int'l Meat Specialties, Inc., 333 N.W.2d 668, 669–70 (Neb. 1983). A land possessor may be liable, for example, where it "has reason to expect that the invitee's attention may be distracted" or "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Id. (citation omitted).

-11-

The court decides that these exceptions to the <u>Crawford</u> rule do not apply because there is "no evidence to suggest that U-Park should have anticipated that Ackerman would not see visible ice, realize the danger of the ice, or fail to protect herself against the danger." <u>Ante</u> at 9. As a procedural matter, the exceptions to the <u>Crawford</u> rule turn on factual issues that should not be decided by an appellate court in the first instance. <u>See, e.g.</u>, <u>Aguallo</u>, 678 N.W.2d at 94 ("Given that the trial court did not resolve whether the City should have anticipated that persons . . . would fail to protect themselves despite the open and obvious nature of the risk, we will not do so on appeal."). And as a substantive matter, the Nebraska Supreme Court has recognized that parking lot users are often distracted and fail to protect themselves from open and obvious dangers. <u>See id.</u> ("A reasonable fact finder could conclude that the City should have anticipated that the users of the parking lot would fail to protect themselves from the erosion because they might have forgotten about it while shopping or at work, or because they were distracted by the items they were carrying."); <u>Burns v. Veterans of Foreign Wars</u>, 438 N.W.2d 485, 492 (Neb. 1989) (a reasonable jury could find that a parking-lot owner should have expected that a parking-lot user "would fail to protect herself against the danger from the icy surface"). I would not decide this unbriefed issue for the first time on appeal. And if I did consider it, I would follow the binding Nebraska case law that militates against granting summary judgment.

For all these reasons, I respectfully dissent.

_____