# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-3123
_____

Bliv, Inc., doing business as Lectro Engineering and Real Bliv, LLC

*Plaintiff - Appellant*

v.

The Charter Oak Fire Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 17, 2025
Filed: November 12, 2025
_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Bliv, Inc. owns a commercial building insured by Charter Oak Fire Insurance Company. Bliv asserts that the building sustained a covered loss when it was damaged by water intrusion during a storm on July 9, 2021. Charter Oak retained an expert who opined that the cause of the intrusion of water through the roof was long-term wear and tear, which was excluded from coverage by the policy's express terms. Bliv's expert opined that the cause of the water intrusion was hail damage

from the July 9, 2021, storm—a covered peril. The district court[1] found that Bliv's expert, Brian Johnson, was qualified to render an opinion but that the actual opinion proffered was insufficiently supported "to assist the trier of fact to understand the evidence or determine a fact in issue." The district court excluded Johnson's opinion and without that opinion found that no genuine issue of material fact existed and entered summary judgment in favor of Charter Oak. Bliv appeals, asserting the district court erred when it excluded Johnson's opinion and the resulting grant of summary judgment was improper. We affirm.

## I.    BACKGROUND

The commercial building at issue is equipped with a Thermoplastic Polyolefin ("TPO") membrane roof with a fiberboard layer and additional supporting materials beneath it. Charter Oak insured the building against hail damage but not damage caused by wear and tear. After the building sustained damage during a storm on July 9, 2021, Bliv filed a claim under its policy with Charter Oak for damage both to the exterior and to the interior of the building caused by water intrusion.

Charter Oak retained a professional engineer, Isaac Gaetz, to evaluate the roof condition and determine the cause of the interior water damage. During his inspection, Gaetz found dents on roof vents and air conditioner condenser fins caused by hail. But he did not observe any damage to the TPO membrane roof. Gaetz cut a square of the roof for testing with a moisture meter, which revealed 100% moisture on the upper roof and 45% moisture on the lower roof. Gaetz also inspected the interior of the building and identified widespread moisture-stained ceiling tiles and corroded metal roof decking. Due to the lack of damage to the TPO membrane and the widespread interior water damage, Gaetz concluded the water intrusion was an existing issue unrelated to any hail damage from the July 9 storm.

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

Relying on Gaetz's inspection, Charter Oak determined long-term wear and tear to be the cause of the damage to the roof and resulting water intrusion. While Charter Oak acknowledged the existence of some hail damage to the building—specifically damage to the air conditioner fins and roof vents—it concluded the damage was less than the $2,500 deductible.

Bliv disputed Charter Oak's findings and retained Access Restoration Services ("ARS") to estimate the cost to repair the roof and the interior water damage. In response, Gaetz reinspected the building and reviewed photographs taken by ARS. This time, Gaetz observed a failed roofing seam, which he included in a supplemental report. Gaetz also noted a defect at one of the parapet walls as a potential point of water intrusion. Additional moisture testing revealed that elevated moisture levels coincided with the parapet walls and deficient roofing seam. Gaetz's causation opinion remained unchanged, and Charter Oak again denied coverage. Shortly thereafter, Bliv commenced this action.

Bliv retained its own professional engineer, Brian Johnson, as an expert witness to determine the cause of the damage to the roof and resulting water intrusion. Johnson reviewed Gaetz's first report (but not the supplemental report), ARS's estimate, and satellite images of the building from before and after the storm. On May 30, 2023, Johnson visually inspected the roof for about two hours. He did not inspect the interior damage, nor did he cut the roof or conduct any scientific testing of the roof structure. Instead, Johnson relied on Gaetz's report and ARS's estimate to conclude that hail had caused the loss. Johnson explained this decision by noting that it was his opinion that the materials he relied upon were more instructive in determining the cause of the loss because they were created closer in time to the storm. Johnson agreed with Gaetz that there was no apparent damage to the TPO membrane. Where Johnson parted ways with Gaetz was that Johnson believed that hail between 1-2 inches could damage the TPO membrane without leaving signs that would be obvious during a visual inspection. Johnson then eliminated alternative explanations for the water intrusion, which left only hail damage to explain the loss. Johnson also opined that the interior water damage was

not sufficiently widespread to be consistent with long-term water intrusion. Johnson's opinion in this regard was a bit uncertain, as he was unable to estimate when the water intrusion began.

Charter Oak moved to exclude Johnson, conceding that Johnson was qualified as an expert but arguing that Johnson's opinions lacked sufficient factual support and were not the product of reliable principles or methods. Among other issues, Charter Oak pointed to Johnson's failure to review Gaetz's supplemental report, which identified a failed roofing seam. After Charter Oak filed its motion to exclude, Johnson reviewed Gaetz's supplemental report and filed a declaration stating that the supplemental report did not change his opinions. Johnson opined that a single failed roofing seam could not cause the widespread interior water damage.

The district court granted Charter Oak's motion to exclude, focusing on deficiencies in Johnson's investigation, such as his initial failure to consider Gaetz's supplemental report, delayed inspection of the exterior, lack of inspection of the interior, and decision not to conduct independent testing. The court also noted Johnson's failure to review maintenance records and his reliance on marketing materials. Charter Oak then moved for summary judgment with the sole contested issue being whether a covered peril caused the water intrusion. Without Johnson's opinion, Bliv was unable to rebut Gaetz's causation opinion. Bliv appeals the exclusion of Johnson's opinion and the adverse grant of summary judgment.

## II. DISCUSSION

We review the exclusion of an expert's opinions under the deferential abuse of discretion standard and will not reverse unless the district court's ruling is "manifestly erroneous." Sprafka v. Med. Device Bus. Servs., Inc., 139 F.4th 656, 660 (8th Cir. 2025) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997)). Under this standard, "the district court has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any

mistake of law." Dunn v. Nexgrill Indus., Inc., 636 F.3d 1049, 1055 (8th Cir. 2011) (quotation omitted).

Under Federal Rule of Evidence 702, "expert opinions must be based upon sufficient facts or data and must be the product of reliable principles and methods that have been reliably applied to the facts of the case." Sprafka, 139 F.4th at 660. Rule 703 expressly permits an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993) ("Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observations. Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." (internal citations omitted)). It is thus permissible for experts to rely on testing conducted by another person or entity in forming their opinion. See Sappington v. Skyjack, Inc., 512 F.3d 440, 450-51, 453 (8th Cir. 2008) (recognizing that an expert opinion based on secondhand review of facts or data is not inherently less reliable than an expert opinion based on firsthand knowledge or observation). The rule allows an expert to rely completely on information collected by others, so long as it is reasonable to do so in the expert's field. See Fed. R. Evid. 703, Advisory Committee's Notes to 1972 Proposed Rules.

Nevertheless, "expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case is inadmissible." Lancaster v. BNSF Ry. Co., 75 F.4th 967, 970 (8th Cir. 2023) (citations and quotations omitted). The district court's role as the gatekeeper requires it "to discern expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge." Ackerman v. U-Park, Inc., 951 F.3d 929, 933 (8th Cir. 2020) (quotation omitted). Still, Rule 702 calls for a "flexible inquiry," which "may lead to differing decisions as to whether to admit experts' testimonies." Allstate Indem. Co. v. Dixon, 932 F.3d 696, 701 (8th Cir. 2019).

Bliv contends the district court made erroneous factual findings in excluding Johnson. That argument is not without some attraction. The district court found Johnson relied on marketing materials to conclude fiberboard is more susceptible to hail impact than other coverboard materials, but Johnson relied on both the marketing materials and his own experience with similar roofs. Whether fiberboards are more susceptible than other coverboards was actually immaterial to Johnson's opinion, which was simply that coverboards can evidence hail damage even when the TPO membrane does not. The district court also faulted Johnson for failing to review maintenance records, but the district court record itself fails to show that any such relevant maintenance records were in existence to be inspected. Finally, the district court noted that Johnson had not reviewed Gaetz's supplemental report before his deposition, but the court then failed to note that Johnson subsequently reviewed the supplemental report, and it did not change his opinion.

Notwithstanding these inconsistencies, there is a sufficient basis to conclude the district court did not abuse its discretion in excluding Johnson. Neither Johnson nor Gaetz identified hail damage to the TPO membrane. While Johnson cited research explaining that hail between 1-2 inches could damage a TPO membrane without being obvious to visual inspection, that same research stated that hail damage was readily evident when examining removed samples of the TPO membrane. Johnson, however, did not cut any samples of the TPO membrane or conduct a further examination of the membrane to determine whether latent hail damage was evidenced by the TPO membrane. Instead, Johnson relied on the elimination of alternative causes of water intrusion. See Shuck v. CNH Am., LLC, 498 F.3d 868, 875 (8th Cir. 2007) (allowing expert opinions that "systematically included and excluded possible theories of causation").

In doing so, Johnson overlooked critical information when eliminating failed roofing seams as an alternative cause. While Johnson recognized a failed roofing seam could cause water intrusion, he eliminated it as an alternative cause due to Gaetz's failure to locate one. Unbeknownst to Johnson when drafting his report and testifying at his deposition, Gaetz had in fact identified a failed roofing seam in his

supplemental report. Johnson's opinion thus relied on incomplete information. <u>See</u> <u>Lancaster</u>, 75 F.4th at 970 (finding an expert opinion "lacked a reliable foundation because it was premised on a misunderstanding of" another expert's report).

After Charter Oak moved to exclude his opinions, Johnson attempted to remedy his failure to review Gaetz's supplemental report by filing a declaration. In his declaration, Johnson did not suggest the roofing seam pictured in Gaetz's report was intact. Rather, Johnson opined that one failed seam on the upper roof would not fully explain the widespread water damage, including water damage to the lower roof. That explanation undermined Johnson's previous opinion indicating there was no evidence of widespread water intrusion. More importantly, Johnson failed to address Gaetz's deposition testimony, which also identified a defect at one of the parapet walls as a potential point of additional water intrusion. While Gaetz opined that elevated moisture readings coincided with the parapet walls and the deficient roofing seam, Johnson never addressed Gaetz's supplemental report and deposition testimony on these areas. Gaetz also suggested additional failed seams existed even though they have not been identified. Johnson could not—and did not—dismiss that possibility because he admittedly did not probe every seam on the roof and he acknowledged that he had failed to locate the failed seam identified by Gaetz.

Johnson proposed an explanation for the water intrusion that he admitted was rare: small punctures in the TPO membrane caused by hail that were not readily visible. Instead of testing portions of the roof to support his opinion, Johnson chose to eliminate alternative causes. In doing so, Johnson overlooked critical information in Gaetz's supplemental report. When he tried to correct that mistake, Johnson still failed to address important aspects of Gaetz's supplemental report and deposition testimony. While a different judge may well have concluded that these issues go to the weight of the opinions offered and not their admissibility, the district court's decision was not "manifestly erroneous," as there is a reasoned basis to find, as the district court did, that Johnson failed to consider or account for critical information when forming his opinions. <u>See</u> <u>Sprafka</u>, 139 F.4th at 660.

Bliv acknowledges that Johnson was its sole causation expert and without his opinions, it lacked admissible evidence showing a loss covered under the insurance policy. Because we find no abuse of discretion in excluding the expert opinion, the district court did not err in granting summary judgment to Charter Oak.

## III.    CONCLUSION

We affirm the judgment of the district court.

_____