# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2505

_____

Kayla Nemmers,

        Plaintiff-Appellant,

v.

Ford Motor Company,

        Defendant-Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Southern District of Iowa.
\*
\*
\*

_____

Submitted: February 15, 2012
Filed: July 10, 2012

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Plaintiff Kayla Nemmers filed a products liability action against Defendant Ford Motor Company, alleging that a lap-only seatbelt installed in the front-center seat of a 2002 Ford F-250 pickup failed to restrain her torso during an accident. After trial, the jury returned a verdict in favor of Ford. Nemmers appeals, arguing the district court[1] committed reversible error in its evidentiary rulings, by refusing to

---

[1] The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

dismiss certain jurors for cause, and by failing to admonish defense counsel for remarks made during closing argument. We affirm.

## I. Background

On the night of February 3, 2007, Nemmers was riding in the front-center seat of a 2002 Ford F-250 pickup, which was equipped only with a lap belt. Bradley Chrest was driving the truck and his brother, Raymond Chrest, was in the passenger seat to the right of Nemmers. While traveling down a snow-covered country dirt road in Iowa, the truck slid across the roadway into an adjacent ditch, collided with a tree stump, rotated clockwise, rolled over, and came to rest on its roof. When emergency responders arrived on the scene, Nemmers was found on the ground outside the vehicle. As a result of the accident, Nemmers suffered a spinal cord injury leading to permanent paralysis.

Nemmers filed a diversity civil action against Ford, on behalf of herself and her minor son, based on her allegation that the lap belt failed to restrain her torso during the accident. Nemmers's amended complaint included claims based on strict liability, negligence and failure to warn and instruct, and breach of warranties. After trial, the jury found Ford was not at fault and rendered a verdict in Ford's favor. The trial court entered judgment in favor of Ford and denied Nemmers's motion for a new trial. Nemmers appeals a number of the rulings made by the district court, and she seeks a new trial.

## II. Analysis

Nemmers raises three separate claims of error, and we address each in turn.

## A. Evidentiary Rulings

Nemmers first challenges the trial court's rulings as to the admissibility or exclusion of different pieces of evidence. Determinations as to the admissibility of evidence lie within the sound discretion of the district court, which this Court reviews for an abuse of discretion. Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 818 (8th Cir. 2010). "This deferential standard recognizes that the district court has a range of choices, and its decision will not be disturbed as long as it stays within that range, is not influenced by a mistake of law or fact, and does not reflect a clear error of judgment in balancing relevant factors." Id.

### i. Evidence of intoxication

Nemmers argues the district court erred by allowing evidence to be admitted that the driver of the truck, Bradley Chrest, was intoxicated at the time of the accident. As measured in a breath test conducted more than an hour after the accident, Chrest's blood alcohol content was 0.189, more than twice the legal limit.

Nemmers claims evidence of Chrest's intoxication should have been excluded because it is irrelevant to her "crashworthiness"[2] case against Ford. Specifically, she argues that as a result of weather conditions on the road at the time of the accident, a driver would only have had three to four seconds of reaction time and "the combination of snow atop frozen ground and a 15-33% cross-slope rendered it impossible for the driver to either (a) slow the vehicle with his brakes or (b) reacquire

---

[2] The "crashworthiness" doctrine, also known as the "enhanced injury" doctrine, "is applicable when a design defect, not causally connected to the accident, results in injuries greater than those which would have resulted from the accident had there been no design defect. In other words, enhancement of injuries is the gist of crashworthiness cases, not the precipitating cause of the accident." Reed v. Chrysler Corp., 494 N.W.2d 224, 226 (Iowa 1992) overruled by Jahn v. Hyundai Motor Co., 773 N.W.2d 550, 560 (Iowa 2009).

the dirt road" after the truck entered the adjacent ditch. Nemmers contends "Ford produced no concrete fact to rebut the conclusive evidence that the driver's intoxication (a) was not a factor in the events leading to the accident itself and (b) had not the remotest relevance to the second-impact mechanisms that resulted in Ms. Nemmers' tragic injuries."

We do not agree. Evidence of Chrest's negligence was properly admitted because it was relevant to issues of causation and comparative fault under Iowa law.[3] Pursuant to the Iowa Comparative Fault Act, Iowa Code chapter 668, the fault of a released tortfeasor "whose negligence was a proximate cause of the underlying accident and of the plaintiff's injuries [may] be compared by the jury on [a] plaintiff's enhanced injury claim against the product defendant." Jahn v. Hyundai Motor Co., 773 N.W.2d 550, 552 (Iowa 2009). Indeed, "[u]nlike many comparative fault statutes which apply comparative fault concepts only in cases involving negligence, Iowa's comparative fault statute expressly states that the fault of other parties is to be compared in cases of negligence, recklessness, and strict liability." Id. at 560 (internal citations omitted); cf. Shipler v. General Motors Corp., 710 N.W.2d 807, 831-32 (Neb. 2006) (concluding Nebraska legislature did not intend for comparative negligence scheme to apply in actions based on strict liability; therefore, trial court did not err in refusing to admit evidence of driver's and passenger's intoxication in design defect case against automobile manufacturer).

_____

[3] "In this diversity case, we apply Iowa's choice of law principles." Washburn v. Soper, 319 F.3d 338, 341 (8th Cir. 2003). The Iowa Supreme Court has chosen to apply the Restatement's "most significant relationship" methodology for choice of law issues. See, e.g., Veasley v. CRST Int'l, Inc., 553 N.W.2d 896, 897 (Iowa 1996). Nemmers is a citizen of Iowa and the accident occurred in Iowa. Absent any argument to the contrary from the parties, we determine that Iowa has the most significant relationship to this tort action and that Iowa law applies.

There was sufficient credible evidence that Chrest's intoxication proximately caused the accident. "Causation has two components: '(1) the defendant's conduct must have in fact caused the plaintiff's damages (generally a factual inquiry) and (2) the policy of the law must require the defendant to be legally responsible for the injury (generally a legal question).'" Berte v. Bode, 692 N.W.2d 368, 372 (Iowa 2005) (citation and emphasis omitted). "We apply a 'but-for' test to determine whether the defendant's conduct was a cause in fact of the plaintiff's harm." Id. "A defendant's conduct is not a cause in fact if the plaintiff would have suffered the same harm had the defendant not acted negligently. The defendant's conduct is not a legal cause if the harm that resulted from the defendant's negligence is so clearly outside the risks he assumed that it would be unjust or at least impractical to impose liability." Faber v. Herman, 731 N.W.2d 1, 7 (Iowa 2007) (internal citations and alterations omitted).

Based on the evidence presented at trial, a reasonable jury could conclude that the truck entered the adjacent ditch because Chrest was intoxicated and thus the accident would not have happened "but for" Chrest's intoxication. See, e.g., Miles v. Gen. Motors Corp., 262 F.3d 720, 723 (8th Cir. 2001) ("We find no abuse of discretion in this instance because Miles's alcohol consumption was relevant to the question of whether Miles contributed to the accident."); Nicholson v. City of Des Moines, 67 N.W.2d 533, 537 (Iowa 1954) ("The questions whether the deceased was intoxicated and whether such intoxication, if found to exist, contributed to his injury, were each for the jury."). Chrest should certainly have contemplated that he risked injury to himself, his passengers, and to other persons on the roadway by driving under the influence of alcohol. Accordingly, the intoxication evidence was properly admitted to allow the jury to decide whether it was a proximate cause of the truck accident and to compare Chrest's fault.

-5-

### ii. Evidence Nemmers was not wearing her seatbelt

Nemmers asserts the district court erred in admitting speculative testimony that she was not wearing her seatbelt. She argues allowing such evidence contravened Iowa Code section 321.445, which states that failure-to-wear evidence shall not be considered evidence of comparative fault but may be considered to mitigate damages. See Iowa Code § 321.445.4(b). In response, Ford contends the failure-to-wear evidence was relevant and admissible to the issue of whether the alleged defect in the restraint system was a cause of Nemmers's injuries. See, e.g., Hodges v. Mack Trucks, Inc., 474 F.3d 188, 202 (5th Cir. 2006) ("[I]n secondary-collision product-liability actions, [evidence of failure to wear a seatbelt] may be admissible to show, or . . . rebut, the essential element of causation.").

Nemmers has not shown in the record that she cited to section 321.445 when she objected to the admission of the failure-to-wear evidence. Because Nemmers failed to articulate to the district court the precise objection she now relies upon, we apply plain error review. Inacom Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 691 (8th Cir. 2001). "'Plain error is a stringently limited standard of review, especially in the civil context.' . . . To obtain relief, a party must show that a clear or obvious error affected [her] substantial rights at trial." Csiszer v. Wren, 614 F.3d 866, 871 (8th Cir. 2010) (internal citation omitted).

Section 321.445 is silent, and the Iowa Supreme Court has not spoken, as to whether section 321.445 prohibits seatbelt evidence when offered on the issue of causation. "In the absence of guidance from the highest state court (or a statute on point), the federal court's task is to predict how the [Iowa] Supreme Court would rule if confronted with the issue today." Weitz Co. LLC v. MacKenzie House, LLC, 665 F.3d 970, 976-77 (8th Cir. 2012), cert. denied, No. 11-1349, 2012 WL 1642605 (June 18, 2012). We predict the Iowa Supreme Court would allow the failure-to-wear

evidence to be admitted in this case. An essential element to establish a design defect is that the alleged defect was the proximate cause of the personal injuries suffered by the user. Osborn v. Massey-Ferguson, Inc., 290 N.W.2d 893, 901 (Iowa 1980). As a result, a plaintiff is required in her case-in-chief to show she used the product she claims is defective. See Hughes v. Massey-Ferguson, Inc., 490 N.W.2d 75, 78 (Iowa Ct. App. 1992). If Nemmers were allowed to challenge the design of the seatbelt without first establishing she used the seatbelt, she would be relieved of the burden of proving all the elements of her prima facie case. Accordingly, the district court did not err in admitting testimony that Nemmers may not have been wearing her seatbelt.

### iii. Similar incident evidence

Nemmers argues the trial court had an "unduly narrow interpretation of the substantial similarity" requirement and therefore the court erred in disallowing evidence of other similar incidents where lap-only belts caused serious or fatal injuries. See, e.g., Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1081 (8th Cir. 2000) ("Evidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation.").

Even if the district court erred in disallowing substantially similar evidence, Nemmers failed to demonstrate in her briefing where the court did so and how she was prejudiced. Because Nemmers failed to cite to the trial court's ruling in the record, we decline to address it. See Watson v. O'Neill, 365 F.3d 609, 615 (8th Cir. 2004) ("[W]e will only address [evidentiary rulings] sufficiently identified and discussed in Watson's brief."); see also Fed. R. App. P. 28(a)(9)(A) (appellant's brief

must contain "citations to the authorities and parts of the record on which the appellant relies").[4]

## B.  Failure to Strike Prospective Jurors for Cause

Nemmers contends the trial court erred by refusing to dismiss certain jurors for cause.  Like the court's evidentiary rulings, "[w]e review denial of strikes for cause under an abuse of discretion standard."  Moran v. Clarke, 443 F.3d 646, 650 (8th Cir. 2006).

During voir dire, Nemmers sought to strike two separate panelists for cause. Prospective juror Phelps stated that Ford's local counsel, Lane & Waterman, represented Phelps, her husband, and her brother-in-law, in a business transaction three years earlier and the firm was one that she "would [still] use for business." Prospective juror Gerling proclaimed he was "a Ford guy" because not only did his employer own "quite a few F-250s" but he himself had owned 23 Fords.  The court denied Nemmers's requests to strike Phelps and Gerling for cause.  Nemmers now argues that she had to "exhaust all of her peremptory challenges to strike overtly biased or prejudiced potential jurors" and that, as a result, she was forced to leave Foreman Hill on the jury "who revealed that his significant other had been killed by an intoxicated driver less than a year before the commencement of this trial."

---

[4] During oral argument, Nemmers's counsel asserted the evidence that was improperly excluded was a report prepared by the National Transportation Safety Board (NTSB).  But Nemmers did not mention the NTSB report in her opening brief, and she did not file a reply brief. "Because this point was raised for the first time at oral argument, and has not been briefed, it is waived."  Twin Cities Galleries, LLC v. Media Arts Group, Inc., 476 F.3d 598, 602 n.1 (8th Cir. 2007).

The courts presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court. Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position.

Moran, 443 F.3d at 650-51 (internal citation omitted). After reviewing the voir dire transcript, we do not agree that the trial court abused its discretion in failing to dismiss the two challenged prospective jurors for cause. During voir dire, the trial judge asked the jury panel whether any jurors knew any reason why they could not be fair and impartial, and neither Phelps nor Gerling gave any indication they were unable to do so. Furthermore, Gerling was asked pointedly by Ford's counsel whether his affinity for Ford would affect his decisionmaking:

> Q: What I want to ask you bluntly is if Judge Wolle instructs you that you are to follow the law, apply that law to the evidence as it came into court, would you follow his instructions? . . .
> A: Yes.
> Q: Would you fairly assess the evidence and weigh it and apply the law as instructed to you by Judge Wolle?
> A: Yes.
> Q: And in doing that would you be able to be fair to both parties?
> A. Yes.

Nemmers has failed to meet her burden of showing that each challenged prospective juror was "unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court." Moran, 443 F.3d at 650.[5] Accordingly,

---

[5] Even if we agreed with Nemmers that the prospective jurors were biased, Nemmers cured any prejudice by using her peremptory strikes to dismiss Phelps and Gerling from the jury. See Moran v. Clarke, 443 F.3d 646, 651 n.3 (8th Cir. 2006)

the district court did not abuse its discretion in failing to dismiss the two challenged jurors for cause.

Nemmers also suggests that it was an abuse of discretion for the trial court to refuse her "off-the-record request to further examine Foreman Hill in seclusion from the rest of the panel regarding his loved one's death." Nemmers argues that such an inquiry "would have revealed an additional fact that demonstrated patent for-cause prejudice on Mr. Hill's part: the inebriated and drug-impaired, at-fault driver [who killed his significant other] was a lawyer." This argument fails because we do not consider alleged errors that are not part of the record on appeal. See, e.g., United States v. Wadlington, 233 F.3d 1067, 1081 (8th Cir. 2000) ("We will consider only those contentions which include 'citations to the authorities and parts of the record on which [he] relies.'" (quoting Fed. R. App. P. 28(a)(9)). Furthermore, although Foreman Hill's significant other was killed by a member of the bar, it does not follow (nor has Nemmers demonstrated) that Hill was unable to fairly and adequately apply the law in Nemmers's case.

## C. Closing Arguments

Finally, Nemmers contends the trial court erred in failing to admonish the jury when, during summation, defense counsel made comments suggesting Bradley and Raymond Chrest exacerbated Nemmers's injury after the accident. During closing argument, defense counsel suggested that "Being dragged out of the truck's back window by a couple of drunk men . . . probably didn't help matters." Nemmers objected to the statement and requested a curative instruction. The district court overruled the objection.

---

(noting district court's failure to strike prospective juror for cause was moot because prospective juror was removed by peremptory challenge).

"The district court is in a better position to determine whether prejudice has resulted from closing argument, and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion." Harris v. Steelweld Equip. Co., 869 F.2d 396, 405 (8th Cir. 1989) (citation and quotation marks omitted). "Further, 'to constitute reversible error, statements made in oral arguments must be plainly *unwarranted* and clearly injurious.'" Id. (citation omitted).

Arguing the district court erred by refusing to give a curative instruction, Nemmers points to the decision in Conn v. Alfstad, 801 N.W.2d 33, 2011 WL 1566005 (Iowa Ct. App. Apr. 27, 2011) (unpublished), where the Iowa appeals court affirmed a trial court's decision to grant a new trial where defense counsel analogized a lawsuit in court to "hitting a jackpot" in a casino, referred to the more than $600,000 sought for plaintiffs' damages, and told the jurors "It would change the lives of you and me or anybody in this courtroom to receive that kind of money." 2011 WL 1566005, at *4-6. The Conn court found the closing argument cast the plaintiffs' actions in an unfair light and violated the "golden rule" prohibition announced by the Iowa Supreme Court, which disallows "'[d]irect appeals to jurors to place themselves in the situation of one of the parties, to allow such damages as they would wish if in the same position, or to consider what they would be willing to accept in compensation for similar injuries.'" Id. at *4 (citation omitted).

In the instant case, we are unconvinced defense counsel's comments made during closing argument were unwarranted or that the comments led to prejudice. "'Argument of counsel is a procedural question to be determined by federal law . . . . Under federal law, considerable discretion is given to the trial court to control arguments . . . .'" Harris, 869 F.2d at 405 (citation omitted). Here, defense counsel merely commented about the cause and extent of Nemmers's neck injury. There was evidentiary support for the notion that the Chrest brothers removed Nemmers from the truck: she was found on the ground outside the vehicle when responders arrived.

-11-

As a result, defense counsel's comments are not like those found in <u>Conn</u>, where the comments were entirely unconnected to the case and merely aimed at encouraging jurors "to decide damages based on their personal interest rather than on the evidence." <u>Conn</u>, 2011 WL 1566005, at *5. Furthermore, <u>Conn</u> upheld the trial court's decision to grant a new trial based on the deference given to the lower court's evaluation of prejudice. <u>See</u> <u>id.</u> at *6-7. Similarly, in this case we defer to the district court's finding that there was no prejudice from the statement so as to warrant a curative instruction.

Because the comments made during closing argument were neither plainly unwarranted nor clearly injurious, this court finds no abuse of discretion by the district court.

## III. Conclusion

Accordingly, we affirm.

_____