# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1373
_____

Lisa Woodward; Peter Woodward

*Plaintiffs - Appellants*

v.

Credit Service International Corporation; Richard Muske

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 22, 2024
Filed: March 24, 2025

_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

In May 2016, Lisa and Peter Woodward incurred a $2,214.44 debt for their child's dental care at Southhill Dental Group ("Southhill"). In May 2017, Southhill placed the unpaid obligation with Credit Service International Corporation ("CSIC") for collection. In February 2022, CSIC filed a claim against the Woodwards in Washington County conciliation court. The Woodwards received no notice of the claim because CSIC sent the summons to the Woodwards' previous home address.

After CSIC obtained a default judgment for $2,880.81, CSIC attorney Richard Muske sent a letter to the Woodwards advising that CSIC intended to garnish their wages to collect the default judgment. The Woodwards did not respond and Muske sent a garnishment summons to their employer, listing an unpaid balance of $2,920.81.

The Woodwards hired attorney Kevin Giebel who filed this lawsuit in state court, claiming that CSIC and Muske violated Minnesota garnishment laws and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. CSIC and Muske removed the case to federal court and served an offer of judgment for $2,002.00 plus reasonable attorney's fees and costs. See Fed. R. Civ. P. 68. The Woodwards accepted the offer and, after judgment was entered, filed a Rule 54(d) motion for an award of attorney's fees and costs "in the current amount" of $26,205.00, which defendants opposed in part. On January 22, 2024, the district court[1] issued an order granting the motion in part, awarding attorney Giebel $12,075.00 of the final $29,139.00 he sought. In a January 29 letter, the Woodwards requested permission to file a motion for reconsideration, as District of Minnesota Local Rule 7.1(j) requires. The court denied the request. The Woodwards appeal. We affirm.

## I. Procedural History

After the Woodwards' employer received the garnishment summons, Giebel contacted CSIC attorney Muske and explained that the conciliation court judgment should be voided because the Woodwards did not receive service. Muske agreed to withdraw the garnishment summons and void the conciliation court judgment. Consistent with his practice, Giebel then filed this FDCPA action in state court, knowing that CSIC had committed an indefensible FDCPA violation in obtaining the default judgment and would likely seek a quick settlement to avoid litigation expense.

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

After removing the case to federal court, counsel for CSIC and Muske served a Rule 68 offer of judgment and filed a notice that the Woodwards accepted the offer on May 4, 2023. The offer contained the following terms:

> 1. Judgment shall be entered in the total amount of . . . [$2,002.00] in favor of Plaintiffs Lisa and Peter Woodward, collectively, as against [CSIC] and Richard Muske . . . .
>
> 2. In addition, Plaintiffs Lisa and Peter Woodward's reasonable attorneys' fees and costs in connection with Plaintiffs Lisa and Peter Woodward's claims against Defendants [CSIC] and Richard Muske in the above-referenced suit are to be added to said judgment; said attorneys' fees and costs as are agreed to between the parties, or if they are unable to agree, as determined by the Court upon motion and any responses thereto.

Following acceptance of the Rule 68 offer, the parties were unable to agree on Giebel's reasonable attorney's fees. On May 5, the district court entered a Rule 68 Judgment in a Civil Case in the amount of $2,002.00.

Federal Rule 54(d)(2) provides that a claim for attorney's fees must be made by motion "no later than 14 days after the entry of judgment" and must specify the "grounds entitling the movant to the award" and the amount sought or a fair estimate of it unless "a court order provides otherwise." District of Minnesota Local Rule 54.3(b) applies to attorney's fees motions under Rule 54(d)(2). Consistent with the Advisory Committee Notes to Local Rule 54.3, the District of Minnesota has held that motions filed under Local Rule 54.3(b) must comply with the provisions of Local Rule 7.1 that govern dispositive motions. See Pentel v. Shepard, No. 18-CV-1447, 2019 WL 6975448 *2 (D. Minn. Dec. 20, 2019) (citation omitted).

Local Rule 7.1 governs Civil Motion Practice in the District of Minnesota. Local Rule 7.1(c) governs Dispositive Motions. As relevant here, it provides:

**(c) Dispositive Motions.** Unless the court orders otherwise, all dispositive motions must be heard by the district judge. Before filing a dispositive motion, a party must contact the district judge's courtroom deputy. The courtroom deputy will either schedule a hearing or instruct the party when to file its motion and supporting documents. . . .

> (1) *Moving Party; Supporting Documents; Time Limits.* At least 42 days before the date of a hearing on a dispositive motion -- or, if no hearing has been scheduled, as instructed by the courtroom deputy -- the moving party must file and serve the following documents simultaneously:
> > (A) motion;
> > (B) notice of hearing;
> > (C) memorandum of law;
> > (D) any affidavits and exhibits;
> > (E) meet-and-confer statement, if required under LR 7.1(a) (unless later filing is permitted . . .); and
> > (F) proposed order (an editable copy of which must be emailed to chambers).
>
> \* \* \* \* \*
>
> (5) *Motion Hearing or Other Resolution.*
> > (A) On Court's Initiative. At any time after a party files a dispositive motion and the motion's supporting documents, the court may:
> > > (i) schedule a hearing (if no hearing was initially scheduled)
> > > (ii) reschedule a hearing
> > > (iii) refer the motion to a magistrate judge; or
> > > (iv) cancel a hearing and notify the parties that the motion will be otherwise resolved.

On May 13, 2023, attorney Giebel filed Plaintiffs' Motion for Attorney Fees and Costs pursuant to "Minnesota Federal Rule of Procedure . . . 54(d)(2)." The Motion stated that the May 5 Judgment, Minnesota's garnishment statute, and the

-4-

FDCPA entitled Plaintiffs to a fee award and that the "[c]urrent attorney fees sought" was estimated to be $28,000.00. The Motion stated that it was based on "the files, records, and proceedings in this action" together with Memoranda of Law in Support, Declaration of Kevin E. Giebel and Exhibits, "all to be served and filed in accord with the Rules." On May 24, the district court entered a text Order denying the Motion without prejudice "for the following reasons":

> Most importantly, the motion was filed without adequate factual support on which the Court could base a determination whether the fees incurred were reasonable. Although Plaintiffs' motion references a supporting declaration and exhibits concerning the estimated $28,000 in attorney's fees claimed, neither a declaration nor any documentary evidence has been submitted. Similarly, although Plaintiffs state that their motion is based upon their memorandum of law, none was filed in support of the motion. . . . Because denial of the motion is without prejudice, Plaintiffs may refile their motion and should do so promptly. . . . [T]hey shall simultaneously file their motion, meet-and-confer statement, memorandum of law, any supporting affidavits and exhibits, and a proposed order. However, a notice of hearing need not be filed. . . . The Court will decide the motion based on the written submissions alone, unless the Court determines that a hearing is necessary . . . .

On May 25, Giebel refiled Plaintiffs' Motion, supported by declarations of Giebel and Lisa Woodward and a memorandum of law. Defendants responded on June 8. On June 9, Giebel sent a letter to the district court "to correct the record." "When I called the Court on May 9, 2023 to secure a motion date, one was not available . . . . A hearing date on Petitioner's motion was to be provided at a later date. In the meantime, I was properly instructed to . . . file the Motion so as to be timely, and proceed with the Notice of Hearing, briefing and other filings once the hearing date was scheduled. I did exactly that." The court responded to this letter in an Order dated June 12, 2023:

> To the extent Plaintiffs seek leave to file a reply concerning communications with the Court's staff or to establish a record on the reasons why Plaintiffs filed the initial motion in the manner that they did, that request is denied. The Court will not deny any portion of a fee award based on the way that the initial filing was made and will disregard any suggestion in the Defendants' opposition that the manner of the initial filing should discount the recoverable fees in this matter. *Neither Plaintiffs, Defendants, nor the Court should spend any more time concerned with those issues.*

(Emphasis added). Despite this clear and very sensible directive, counsel for both parties have belabored this issue on appeal. For this reason, the court directs that each side will bear its own appeal costs. <u>See</u> Fed. R. App. P. 39(a).

In its January 22, 2024 Order, the district court granted in part and denied in part Giebel's motion, awarding him $12,075.00 in attorney's fees. The court properly used the "lodestar method" to begin its determination of a reasonable fee, multiplying the number of hours reasonably expended by the reasonable hourly rate. The court concluded that $350 represented a reasonable hourly rate for what it considered a straightforward case, rather than the $450 hourly rate Giebel requested, and that only 34.5 out of the 72.4 hours Giebel claimed were reasonably expended.

Giebel then requested permission to file a motion for reconsideration of the court's January 22 Order, arguing the court made several legal and factual errors. The district court denied the letter request in a February 14, 2024 Order, explaining the letter "does not explicitly address the standard for obtaining permission to file a motion for reconsideration," "identifies no manifest errors of law or fact justifying granting permission to file," and "seeks to reargue matters the Court has already considered and presents primarily a disagreement with the Court's ruling." The court noted that the letter "did identify an opinion regarding prevailing market rates," but "the highlighted opinion does not change the calculus that led the Court to conclude

-6-

that $350 per hour represents an appropriate rate for *this* case." Plaintiffs appeal, arguing the court erred in the May 24, 2023, and the January 22 and February 14, 2024 Orders.

## II. Discussion

**A. The May 24 Order.** Giebel argues the district court erred when it denied Plaintiffs' initial motion for attorney's fees without prejudice because the filings "fully complied with Minnesota District Local Rule 7(c), and all required rules and court procedures when making those filings . . . as separately instructed by the Court Deputy." Arguing that this "clear error of fact and law . . . undoubtedly questions and impugns the competency and reputation of Counsel in a field where" he practices, Giebel urges us to "remand to make the appropriate correction or redaction" in the May 24, 2023 Order and in the reference to that Order in footnote 1 of the January 22, 2024 Order. We conclude this contention is without merit for multiple reasons.

First, the issue was not preserved for appeal. A notice of appeal must "designate the judgment -- or the appealable order -- from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Because Plaintiffs failed to designate the May 24, 2023 Order in their Notice of Appeal dated February 21, 2024, the question is whether the May 24 Order was "encompassed" in the appeal under Rule 3(c)(4), a provision added in the 2021 amendments to Rule 3(c):

> (4) The notice of appeal encompasses all orders that, for purposes of appeal, *merge into the designated judgment or appealable order*. It is not necessary to designate those orders in the notice of appeal.

(Emphasis added). The Advisory Committee notes explain that "the amendment does not attempt to codify the merger principle but instead leaves its details to case law."

The question then is whether the May 24 Order denying Giebel's initial motion without prejudice "merges into" the final January 22, 2024 Order.

Generally, an appeal from a final judgment permits review of "earlier interlocutory orders [because they] merge into the judgment for appeal." Beadle v. City of Omaha, 983 F.3d 1073, 1075 (8th Cir. 2020) (citations omitted). Here, however, the May 24 Order was not an interlocutory order -- it directed Plaintiffs to file a proper motion for attorney's fees and costs under Local Rule 7.1 within the time limits of Federal Rule 54(d)(2). More important, the district court expressly stated in its June 12, 2023 Order that "[t]he Court will not deny any portion of a fee award based on the way that the initial filing was made." And in its February 14 Order denying Plaintiffs' permission to request reconsideration, the court noted that Giebel's disagreement with footnote 1 of the January 22 Order "provides no basis for reconsideration of the Order." On this record, there was no merger.

Our conclusion that the May 24 Order was not preserved for appeal under Federal Rule of Appellate Procedure 3(c)(4) raises a perplexing issue we decline to resolve. We have stated that the Rule 3(c) requirement to designate an order for appeal "may create a jurisdictional bar to an appeal." Bosley v. Kearney R-1 Sch. Dist., 140 F.3d 776, 781 (8th Cir. 1998); cf. Torres v. Oakland Scavenger Co., 487 U.S. 312, 314-16 (1988). If Plaintiffs' failure to comply with Rule 3(c)(1)(B) was "jurisdictional," that would be the end of this story. But the Supreme Court has frequently observed in recent years that federal courts, including the Supreme Court on occasion, have conflated subject matter jurisdiction with a merits-related determination. Such "drive-by jurisdictional rulings . . . should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit." Arbaugh v. Y & H Corp., 546 U.S. 500, 510-15 (2006) (quotation omitted). Whether non-compliance with Rule 3(c)(1)(B) would be a "drive-by jurisdictional ruling" is an untested question of considerable complexity. So we will also consider the merits of Plaintiffs' attack on the May 24 Order.

Second, we reject Plaintiffs' contention that the district court made "clear error of fact and law." The Advisory Committee Notes unambiguously state that motions filed under Local Rule 54.3 must comply with Local Rule 7.1. District of Minnesota precedents unambiguously state that the Dispositive Motions requirements of Local Rule 7.1(c) govern Local Rule 54.3 motions. Local Rule 7.1(c)(1) unambiguously states that "the moving party must file and serve [six other] documents simultaneously" *with the motion*, including a supporting declaration and exhibits and a memorandum of law. Because Giebel did not file those documents, the district court denied the initial motion without prejudice and gave Plaintiffs a second opportunity to file a timely attorney's fees 54(d)(2) motion, which they did.

For Giebel to assert -- in his June 9 letter to the court, in his letter requesting permission to move for reconsideration, and again in his briefs on appeal -- that his initial filings "fully complied with Minnesota District Local Rule 7(c), and all required rules and court procedures" raises a strong inference he did not bother to read Local Rule 7.1(c)(1), or he thinks that court rules need not be followed.

On appeal, Giebel argues that Local Rule 7.1(c)(1) only applies when a hearing date has been obtained. Since no hearing date could be obtained before his initial filing was due, he "fully complied" with Local Rule 7.1(c). But Local Rule 7.1(c) expressly provides that the courtroom deputy will either schedule a hearing "or instruct the party when to file its motion *and supporting documents*," and Rule 7.1(c)(1) provides, "if no hearing has been scheduled," the moving party must file the motion and other required documents simultaneously "as instructed by the courtroom deputy."[2] Giebel's Reply Brief asserts he "followed Rule 7.1(c)" when he "phoned the District Court's Scheduling Clerk seeking to secure a fee motion hearing date"

---

[2]Judge Menendez's "Practice Pointers and Preferences" reminds parties that they must file their motions and supporting documents "at the same time" even when no hearing date is scheduled. United States District Court, District of Minnesota, *Judges' Practice Pointers and Preferences -- Judge Katherine M. Menendez*.

and then "followed Rule 7.1(c) and the Scheduling Clerk's instructions to the letter." He provided no factual support for these assertions. It is fair to infer that "the District Court's Scheduling Clerk" is authorized to perform the functions of the "courtroom deputy" referred to in Local Rule 7.1(c). But the notion that any member of the district judge's staff serving as a "courtroom deputy" gave Giebel "instructions" that were contrary to the unambiguous mandate of Local Rule 7.1(c)(1) that the motion and supporting papers must be filed simultaneously is, on its face, not credible.

The district court's May 24 text Order denied Plaintiffs' initial filing without prejudice for non-compliance with Local Rule 7.1(c)(1)'s unambiguous requirements. There was no clear error of fact or law. "[A]pplication of local rules is a matter peculiarly within the district court's province" -- it is within the district court's broad discretion to "determine what departures from its rules may be overlooked." Reyher v. Champion Int'l Corp., 975 F.2d 483, 489 (8th Cir.1992).[3]

Third, if there was error, it was clearly harmless. As the May 24 Order directed, Plaintiffs promptly refiled their motion with supporting documents and the motion was then fully briefed and decided on the merits, with the initial filing incident having no effect on the district court's final ruling. As the court said in its June 12 Order, "[n]either Plaintiffs, Defendants, nor the Court should spend any more time concerned with those issues." Attorney Giebel unwisely ignored that directive.

Fourth, the relief Giebel requests -- "remand to make the appropriate correction or redaction" to the district court opinions, rather than its rulings, is inappropriate and arguably beyond our authority as a federal appellate court. As Justice Scalia concisely observed, "[w]e sit, after all, not to correct errors in dicta; [t]his Court

---

[3]Local Rule 7.1(g)(6) provides that the district court may take any action it "considers appropriate" when a party fails to timely file and serve a memorandum of law. Here, the court imposed perhaps the least severe sanction available -- denial of Giebel's non-complying motion without prejudice, with instructions to refile.

reviews judgments, not statements in opinions." <u>Bunting v. Mellen</u>, 541 U.S. 1019, 1023 (2004) (Scalia, J., dissenting from the denial of certiorari) (quotation omitted).

**B. The January 22 Order**.  Giebel argues the district court erred when it reduced Plaintiffs' requested attorney's fee award.  The court's analysis properly followed the well-established rule that "[t]he starting point for determining attorneys' fees is the 'lodestar,' which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate." <u>Beckler v. Rent Recovery Sols., LLC</u>, 83 F.4th 693, 695 (8th Cir. 2023) (quotation omitted).  Giebel contends the court erred in its determination of the number of hours reasonably expended and the reasonable hourly rate to apply to those hours.  We review the court's award for abuse of discretion, according substantial deference to its determination that the requested fees were excessive. <u>Id.</u> at 694-95.  "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011) (cleaned up).

1. Regarding the district court's determination "that a $350 hourly rate is reasonable *in this matter*," Giebel argues the January 22 Order "erroneously contains" two "undisputedly false" findings of fact -- (a) that his two declarations did not offer into evidence "any specific opinion regarding the prevailing attorney fee market rate in the Twin Cities legal community for comperable [sic] services," when the court admitted in its February 14 Order that Giebel's second declaration did so; and (b) that the fee petition did not "point to any affidavit from another local practitioner offering any opinion" as to the reasonableness of the requested $450 hourly rate, when Plaintiffs' memoranda cited an unpublished 2023 District of Minnesota decision noting declarations by defendants' counsel and his law partner that they charge clients up to $425 per hour in similar matters.

Acknowledging that determining an appropriate market rate for a lawyer's services is "inherently difficult," a unanimous Supreme Court held in <u>Blum v.</u>

Stenson that, "[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence -- *in addition to the attorney's own affidavits* -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 465 U.S. 886, 895 n.11 (1984) (emphasis added).

When determining whether the requested hourly rate is reasonable, a district court may "rely on [its] own experience and knowledge of prevailing market rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005). That is what the district court did here in rejecting Giebel's requested $450 hourly rate. "The Plaintiffs' evidence submitted in support of the requested $450 rate," the court concluded, "falls short of satisfying their burden." "[T]he rates allegedly charged by defense counsel in similar FDCPA cases [though relevant] are not particularly persuasive" because "an opponent's fees can be an 'apples-to-oranges comparison' and require additional analysis" (citation omitted). In the case cited by Giebel, defense counsel and his partner charged a discounted $295 rate. The court further explained that Giebel's award of a $575 rate in a heavily litigated Fair Labor Standards Act case "says very little about why such a rate would be reasonable in this relatively simple FDCPA and supplemental state law garnishment case." The court rejected Plaintiffs' argument this case was complex enough to justify a higher hourly rate. "To the contrary this case . . . was a run-of-the-mill dispute that was resolved quickly, and likely could have been resolved even sooner." Giving "due consideration" to Giebel's long career as a practicing attorney and specifically his experience in collections litigation, "the Court finds that a $350 per hour rate is reasonable under the circumstances."

According this finding the substantial deference to which it is entitled, we uphold the court's $350 hourly rate determination. Even if the district court was wrong to state that Giebel had not offered his opinion regarding the prevailing market rates, that opinion lacked specifics and did not meet his burden to produce satisfactory evidence -- *in addition to his own declarations*. Stenson, 465 U.S. at 895

-12-

n.11.  In short, overlooking that part of the declaration was immaterial to the district court's ultimate calculation, as the court confirmed in the February 14 Order when it denied permission to file a motion to reconsider because Giebel's opinion "did not change the calculus" that led it to conclude that $350 per hour was a reasonable rate. Nor did Giebel provide a practitioner's opinion on the reasonableness of the requested rate in this case.

2. We likewise see no reversible error in the district court's conclusion that only 34.5 out of the 72.4 hours Giebel spent on the matter were reasonably expended. Giebel first argues the court "erred as a matter of fact and law" when it deducted 24.2 hours Giebel spent working on the conciliation court matter because those fees were more accurately categorized as Plaintiffs' damages, which were settled in the $2,002.00 Rule 68 Judgment.  This contention is without merit.  The Rule 68 offer of judgment that Plaintiffs accepted expressly provided that Giebel would be entitled to the attorney's fees incurred in connection with claims "in the *above referenced suit*."  The state conciliation court default judgment was the result of a separate suit. Any attorney fee award for vacating that judgment must be obtained from the state court under state law.  Conceivably, the expense of obtaining that relief could be claimed as damages resulting from the violations alleged in this case, but such a claim either was not asserted or was settled in the Rule 68 Judgment.

Giebel further argues the district court "erred as a matter of fact and law in finding that this case involved a bare minimum of litigation and was not particularly complex."  The court excluded "hours that [were] excessive, redundant, or otherwise unnecessary."  Beckler, 83 F.4th at 695, quoting  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  Hensley, 461 U.S. at 434 (quotation omitted).  The district court thoroughly reviewed Defendants' extensive objections to Plaintiffs' attorney's fee claims, rejecting many but finding that 24.2 hours connected to the underlying collection matters in state court and 13.7 hours of

excessive time spent after acceptance of the Rule 68 offer should be deducted. As in Beckler, 83 F.4th at 695, we agree with the district court's assessment of this FDCPA lawsuit and, according "substantial deference" to the court's determination that some hours were not reasonably expended, affirm the January 22, 2024 final Order.

**C. The February 14 Order.** In Part IV of Appellants' Reply Brief, Giebel argues for the first time on appeal that the district court "erred in denying Appellants' logical request for permission of the court to formally move for reconsideration." Though the February 14 Order was designated for appeal in Plaintiffs' Notice of Appeal, it was not included in the Statement of the Issues presented for review in Appellants' Brief, as Federal Rule of Appellate Procedure 28(a)(5) requires. Nor did Appellants' Brief include any specific argument why the February 14 Order should be reversed. Accordingly, the issue was not preserved for appellate review. See, e.g., Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 869 n.1 (8th Cir. 2004) (statement of issues); Liscomb v. Boyce, 954 F.3d 1151, 1154 (8th Cir. 2020) (issue waived if not meaningfully argued).

In any event, the contention is without merit. "The district court's denial of a request for leave to file a motion for reconsideration . . . [is] reviewed for an abuse of discretion." COMSAT Corp. v. St. Paul Fire & Marine Ins. Co., 246 F.3d 1101, 1105 (8th Cir. 2001). As the district court noted, a motion for reconsideration serves the limited function "to correct manifest errors of law or fact or to present newly discovered evidence." Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (quotation omitted). Under District of Minnesota Local Rule 7.1(j), a court can only grant a party's motion for reconsideration when that party shows "compelling circumstances." We agree with the district court's conclusion that Giebel's letter request "identifies no *manifest* errors of law or fact" and merely reargued matters the district court had already considered and rejected. Pointing out the court did not take into account one part of Giebel's declarations did not "change the calculus" that led the court to find that $350 was an appropriate hourly rate.

The Supreme Court has instructed lower courts that "[a] request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437. The district court's February 14 Order was entirely consistent with that directive.

### III. Conclusion

Giebel's briefs on appeal are disrespectful of the district judge, court staff, and opposing counsel. If our review of the attorney's fee award was *de novo*, we might well further reduce it to $5,000, the financial benefit the Woodwards obtained from vacating the conciliation court default judgment and from the Rule 68 Judgment in this case. But our task is limited to deferentially reviewing the district court's award for abuse of discretion. Here, the district court carefully applied the applicable law, thoroughly reviewed the relevant facts and procedural history, and awarded a reduced fee that was well within its substantial discretion. Accordingly, we affirm the Judgment and Orders of the district court being appealed.

_____