# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1095

_____

Jacqueline Colson; Carrie Borgheiinck

*Plaintiffs - Appellants*

Shelly Bratz

*Plaintiff*

v.

Hennepin County

*Defendant - Appellee*

Minnesota Department of Human Services

*Defendant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 22, 2025
Filed: March 11, 2026

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Jacqueline Colson and Carrie Borgheiinck sued their employer, Hennepin County, for failure to accommodate their religious and medical objections to the County's COVID-19 testing policies, alleging claims under Title VII, the Americans with Disabilities Act, and 42 U.S.C. § 1983. The district court[1] dismissed all claims. Both sought leave to file a motion to reconsider the dismissal of their Title VII claims in light of intervening precedent,[2] which the court[3] denied. They now appeal both orders concerning their Title VII claims. We affirm.

We consider the facts as set forth in the complaint and materials "necessarily embraced" in the same. *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1370 (8th Cir. 2022) (citation omitted). During the COVID-19 pandemic, Hennepin County implemented a policy requiring county employees to be fully vaccinated against COVID-19 or else undergo weekly COVID-19 testing. Employees could test at county facilities "on county work time," or on their own time at a community testing site, clinic, hospital, or pharmacy of their choice. They could also use at-home saliva test kits and treat "the time it takes to complete the test as work time." Employees who chose to test at home were advised that they were responsible for coding their timecard accordingly.

Borgheiinck is a Christian who believes that "each person has the God-given right to choose what he or she will inject into their body, or extract from their body, based on free will." She alleges that "mandatory vaccines" and "involuntary weekly

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, now retired.

[2]Specifically: *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024); *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110 (8th Cir. 2024).

[3]The Honorable Jerry W. Blackwell, United States District Judge for the District of Minnesota.

testing" violate her religious beliefs because they involve either an "involuntary intrusion into her body" or an "involuntary extraction from her body." When Borgheiinck requested a religious accommodation from testing, she was granted twelve weeks of unpaid leave. But the County later revoked the accommodation, citing undue hardship. Borgheiinck proposed alternative accommodations such as transferring to a fully remote department or working primarily from home in her current role and following the County's COVID-19 policy when she was on-site, but the County did not respond and ultimately fired her.

Colson is a Christian who also believes "each person has the God given right to choose what he or she will put into their body, or take out of her body, based on free will." She believes "in the sanctity of human life" and that "she must treat her body as Temple of the Holy Spirit." She alleges that weekly testing violates her religious beliefs "because it involves an involuntary intrusion into her body and extractions from her body, a Temple of God." Complying with the vaccine option would also violate her religious beliefs because "available vaccines were produced with, or tested with cells from aborted babies." Colson requested an exemption from weekly nasal swab testing, which was granted. She agreed to saliva testing as an accommodation. She has not been fired, but she alleges that weekly testing for unvaccinated employees "is time consuming, and done outside of work hours," and that the test "is not private," because "the tester's family members are frequently seen and heard on the testing calls" and unidentified others also "observe the saliva tests [she] has to undergo."

We review the district court's order granting the motion to dismiss *de novo*, accepting the complaint's well-pleaded allegations as true and drawing all reasonable inferences in the employees' favor. *Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 627 (8th Cir. 2025). We may affirm for any reason supported by the record. *Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617, 626 (8th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012).

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). To state a claim based on an employer's failure to accommodate religious beliefs, the employees must show that (1) "they have a bona fide religious belief that conflicts with an employment requirement"; (2) "they informed [their employer] of this belief"; and (3) "they were disciplined for failing to comply with the conflicting requirement of employment." *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900 (8th Cir. 2024) (quoting *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003)). At the pleadings stage, Borgheiinck and Colson are not required to establish a prima facie case, but they must plead sufficient factual allegations to plausibly support each of these three elements. *See Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021); *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020).

Borgheiinck's claim fails at the first prong. Our concern is not with the "validity" of her beliefs. *United States v. Seeger*, 380 U.S. 163, 185 (1965) ("[T]he 'truth' of a [religious] belief is not open to question."); *see also Ringhofer*, 102 F.4th at 900 ("Religious beliefs do not need to be 'acceptable, logical, consistent, or comprehensible to others.'" (quoting *Thomas v. Rev. Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981))). Nor with their sincerity. *Kale v. Aero Simulation, Inc.*, 139 F.4th 684, 689 (8th Cir. 2025); *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) (sincerity is a factual question). The problem is that her complaint fails to connect her objections to the County's testing policy with her specific religious beliefs. *See Kale* 139 F.4th at 689.

Unlike previous plaintiffs, Borgheiinck has not alleged that her "body is a temple," that complying with her employer's COVID-19 policy "would make her

-4-

complicit in the killing of the unborn babies," or that testing would be "the equivalent of committing idolatry." *Ringhofer*, 102 F.4th at 901–02. Nor has she alleged that her "beliefs in the energetic connectedness of the universe do not allow her to receive an injection of the COVID-19 vaccines," or that COVID-19 testing involves "mixing her biological materials with serum taken from fetal bovines." *Brokken v. Hennepin County*, 140 F.4th 445, 450–51 (8th Cir. 2025). All she alleges is that she has a "God-given right to choose what [] she will inject into [her] body, or extract from [her] body, based on free will." Her complaint does not explain how her refusal of COVID-19 testing and vaccination "was motivated by, or a part of, [her] religious beliefs." *Snyder v. Arconic, Corp.*, No. 23-3188, 2024 WL 3813173, at *2 (8th Cir. Aug. 14, 2024) (per curiam), *cert. denied*, 145 S. Ct. 1312 (2025). Though she alleges a God-given right to choose, she has not alleged how that belief—or any other sincerely held religious principle—requires, guides, or encourages her choice.

Colson's claim fails at the third prong. She hasn't alleged facts sufficient to establish that she was fired, suspended, demoted, or otherwise "disciplined for failing to comply with the conflicting requirement of employment." *Ringhofer*, 102 F.4th at 900 (citation omitted). Nor has she identified any other "adverse employment action"—that is, any "disadvantageous change to the compensation, terms, conditions, or privileges of employment"—as we've elsewhere articulated this requirement. *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024) (citing *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)); *Brokken*, 140 F.4th at 450.

Colson argues otherwise, saying she was disciplined by being "forced" to test outside of work hours without pay.[4] And relying on our decision in *Cole*, she claims

---

[4]To the extent she argues that the adverse employment action was making her "abandon her religious beliefs" by testing at all, regardless of whether she was compensated (and although she agreed to saliva testing), she argues it for the first time on appeal, and we decline to consider this theory. *See Perry v. Precythe*, 121 F.4th 711, 716 (8th Cir. 2024). We also decline to reach her argument that there's any "obvious[]" "intimation" from her allegation that the testing wasn't private that

that whether this change "resulted in 'some harm' to a term or condition of [her] employment" at least "requires further factual development." 105 F.4th at 1114. But she did not plead that the time she spent testing at home was unpaid, and we will not "conjure up" that "unpled allegation[] to save [her] complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (citation omitted). Even if we could reasonably infer from the complaint that testing was uncompensated because it was "done outside of work hours," that inference is dispelled by the County's policy documents—whose contents are alleged in the complaint and whose authenticity no party questions, *see Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)—which expressly allow for paid testing time. Colson's argument that "the County offers no proof" she was paid, only that she "could have received compensation if certain procedures were followed," is not well-taken. It was her burden to plead a facially plausible claim for relief. *Iqbal*, 556 U.S. at 678.

The district court did not err by granting the County's motion to dismiss. Nor did it abuse its discretion by denying Colson and Borgheiinck's request for leave to file a motion for reconsideration. *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1058 (8th Cir. 2025) (standard of review); D. Minn. L.R. 7.1(j) (requiring "compelling circumstances" to obtain leave to file a motion for reconsideration). Although *Muldrow*, *Ringhofer*, and *Cole* may represent a change in "the legal landscape," as Borgheiinck and Colson argue, none of those cases compel a different result here.

Affirmed.

---

she found the process of testing "degrading," and that this suffices to plausibly allege an adverse employment action, because it was made on appeal for the first time at oral argument. *See Nemmers v. Ford Motor Co.*, 686 F.3d 486, 491 n.4 (8th Cir. 2012).

STRAS, Circuit Judge, concurring in part and dissenting in part.

Colson's complaint looks a lot like others that have alleged enough to survive a motion to dismiss, including one involving the same employer. *See Brokken v. Hennepin County*, 140 F.4th 445, 449–50 (8th Cir. 2025); *see also Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024) (describing similar religious objections to the COVID-19 vaccine). She objected on religious grounds to receiving the COVID-19 vaccine because, during its "produc[tion]" and "test[ing]," the developers used the "cells [of] aborted babies." *See Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 627 (8th Cir. 2025) (explaining that we treat the complaint's allegations as true at the motion-to-dismiss stage). Hennepin County responded with two choices that she found unacceptable: test weekly or termination.

No one doubts that, had she picked her religion over her job, getting fired would have been a "disadvantageous change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (citation omitted). Somehow, however, picking her job over her religion changes the answer, even though testing also violated her religious convictions by requiring "extractions from her body," which she views as "a Temple of God." *See Brokken*, 140 F.4th at 451 (describing a similar choice "between violating . . . sincerely held religious beliefs by complying with [a] testing requirement and termination"); *Ringhofer*, 102 F.4th at 902 (discussing an objection to a testing mandate based on the plaintiff's belief that "her body is a temple"). In my view, a weekly testing requirement is, for someone like Colson, just as much of an injury as having to clean coworkers' offices or work the night shift. *See Muldrow*, 601 U.S. at 354–56.

As we have explained, an order to violate one's religious beliefs "may itself constitute an adverse action." *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024). But even if not, she alleged more. The complaint explains how she had to spit into a tube weekly while others watched her complete a test that violated her religious beliefs, a process she described as "humiliating, degrading[,] and

time[-]consuming."[5]  *See Muldrow*, 601 U.S. at 354.  Sounds like a "disadvantageous change" to me.  *Id.* at 354 (citation omitted); *see id.* at 355, 357 (explaining that such a change need not be "significant[ly]" or "materially adverse" (citation omitted)).

_____

_____

[5]It is true, as the court points out, that Colson did not repeat these allegations in every filing.  But she has always argued that the testing was an adverse employment action, so it would be no surprise to anyone that the complaint is where it says why.  *See PCTV Gold, Inc. v. SpeedNet, LLC.*, 508 F.3d 1137, 1145 n.5 (8th Cir. 2007) (reaching an argument because a party had "alleged the facts on which it[] . . . [was] based" and it was "encompassed in a . . . more general argument" the party had raised).